# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Juan Antonio Lara Santiago and
Norma Emilia Avila Aguilar,

                    Plaintiffs,

v.                                              Case No. 1:20-cv-5194-MLB

Alejandro Mayorkas, in his official
capacity as Secretary of the U.S.
Department of Homeland Security;
Tracy L. Renaud, in her official
capacity as Senior Official
Performing the Duties of Director
of the U.S. Citizenship and
Immigration Services; and Laura
Zuchowski, in her official capacity
as Director of the Vermont Service
Center of the U.S. Citizenship and
Immigration Services,

                    Defendants.

_____/

## **OPINION & ORDER**

On December 22, 2020, Plaintiffs Juan Antonio Lara Santiago and

Norma Emilia Avila Aguilar sued Defendants challenging the delay in

adjudicating petitions for bona fide U nonimmigrant status ("U Visa")

and corresponding employment authorization documents ("EADs").

(Dkt. 1.)   Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6).  (Dkt. 10.)  The Court grants in part and denies in part that motion.

## I.   Background

### A.   Statutory and Regulatory Background

In October 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, which amended the Immigration and Nationality Act ("INA") and created the U-Visa program.  *See* 8 U.S.C. § 1101(a)(15)(U).  To qualify for a U Visa, a petitioner must show (1) he or she "suffered substantial physical or mental abuse as a result of having been a victim of a qualifying crime," (2) he or she has credible and reliable information about the qualifying crime, (3) he or she has been helpful, is being helpful, or is likely to be helpful to law enforcement in investigating or prosecuting the qualifying crime, and (4) the qualifying crime occurred in the United States or its territories or possessions, or violated a U.S. federal law that provides for extraterritorial jurisdiction.  8 C.F.R. § 214.14(b).

To apply for a U Visa, a petitioner must submit a Form I-918 (i.e., Petition for U Nonimmigrant Status) and Supplement B (i.e., a

certification signed by a certifying agency stating that the petitioner possesses important information about the crime and will cooperate with the investigation or prosecution). *See id.* § 214.14(c)(1), (c)(2)(i). The United States Citizenship and Immigration Services ("USCIS") typically processes these petitions in the order received. *Id.* § 214.14(d)(2). If USCIS approves the U-Visa petition, the petitioner receives lawful nonimmigrant status and employment authorization for up to four years. *Id.* § 274a.12(a)(19); 8 U.S.C. § 1184(p)(3)(B).

Congress capped the number of U Visas at 10,000 per year. 8 U.S.C. § 1184(p)(2). In 2007, anticipating that the statutory cap would be met within the first few years of enactment, USCIS created a regulatory waitlist process. 8 C.F.R. § 214.14(d)(2). Under this process, once the statutory cap has been reached for the year, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list and receive written notice of such placement." *Id.* In other words, if USCIS determines a U-Visa petition is meritorious but a visa is unavailable because of the statutory cap, the petitioner is placed on the waiting list. *Id.* After being placed on the waitlist, the petitioner and any qualifying family members receive deferred action if they are in

the United States.  *Id.*  USCIS may also authorize employment for waitlisted petitioners and qualifying family members.  *Id.*

## B.   Plaintiffs' U-Visa Petitions

Plaintiffs are natives and citizens of Mexico.  (Dkt. 1 ¶¶ 18–19.) They are married and have two U.S. citizen children together.  (*Id.* ¶¶ 8, 18.)  Plaintiff Lara Santiago alleges he is eligible for a U Visa because he was the victim of an aggravated assault.  (*Id.* ¶¶ 8, 31–32.)  As part of this, the Cobb County District Attorney's Office issued him a U-Visa Certification, confirming he was the victim of a qualifying crime and cooperated with law enforcement.  (*Id.*)  He filed his U-Visa petition and petition for family member (i.e., Plaintiff Avila Aguilar) on January 30, 2018.  (*Id.* ¶¶ 12, 33.)

On December 22, 2020, Plaintiffs sued Defendants under the Administrative Procedure Act ("APA") and the Mandamus Act.  (*Id.* ¶¶ 35–49.)   The complaint contains three counts.   Count I is for "Unreasonable Delay of Determination of Plaintiffs' Eligibility for U-[V]isa Waitlist" under the APA.   (*Id.* ¶¶ 35–38.)   They claim Defendants' extensive delay without making eligibility determinations to place them on the U-Visa waitlist is unreasonable, in violation of the

APA, 5 U.S.C. §§ 555(b) and 706(1).  (*Id.* ¶ 37.)  Count II is for "Failure to Comply With Statutory Timeline Mandating EAD Adjudication" under the APA.  (*Id.* ¶¶ 39–42.)  They allege Defendants' refusal to adjudicate Plaintiffs' eligibility for employment authorization is an "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1) and constitutes agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" under 5 U.S.C. § 706(2)(A).  (*Id.* ¶ 42.)  Count III is for "Unlawful Failure to Determine Plaintiffs' Eligibility for U-[V]isa Waitlist" under the Mandamus Act.  (*Id.* ¶¶ 43–49.)  They allege they satisfy all the requirements for a writ of mandamus compelling Defendants to determine their eligibility for the U-Visa waitlist.  (*Id.* ¶ 45.)  They contend that once they properly filed their bona fide U-Visa petitions, they had a clear right to determination of eligibility for the U-Visa waitlist under 8 C.F.R. § 214.14(d)(2), and a clear right to that determination within a reasonable time under 5 U.S.C. § 555(b).  (*Id.* ¶ 46.)  According to Plaintiff, once USCIS received their U-Visa petitions, it had a nondiscretionary duty to decide within a reasonable time whether they were eligible for placement on the waitlist. (*Id.* ¶ 47.)  Although this claim is entitled "Unlawful Failure to

Determine," its content relates to a determination of eligibility for the U-Visa waitlist "within a reasonable period of time." (*Id.* ¶ 46.) Plaintiffs never allege Defendants' outright refusal to process their petitions. Instead, they allege the pace of adjudication is too slow. The Court thus construes this claim to contain the same overarching allegation as Count I but acknowledges Plaintiff brought it under the Mandamus Act, not the APA.

Plaintiffs ask the Court to declare Defendants in violation of 5 U.S.C. §§ 555(b), 706(1), and 706(2)(A); 8 U.S.C. § 1184(p)(6); and 8 C.F.R. § 214.14(d)(2). (*Id.* at 13.) They also ask for a preliminary and permanent injunction requiring Defendants to determine their eligibility for placement on the U-Visa waitlist. (*Id.*) Lastly, they request an award of attorneys' fees and costs under the Equal Access to Justice Act. (*Id.*) Defendants move to dismiss the complaint under Rule 12(b)(1) and 12(b)(6). (Dkt. 10.)

## II.  Standard of Review

### A.  Subject Matter Jurisdiction

A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "[B]ecause a federal court is

powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case . . . ." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). It is presumed that a federal court lacks jurisdiction in a case until the plaintiff shows the court has jurisdiction over the subject matter. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways—a facial attack or a factual attack. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint 'requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (alterations adopted) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). A factual attack, however, challenges the underlying facts supporting the Court's jurisdiction. *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). When evaluating a factual attack, "the district court is not obligated to take the allegations in the complaint as true." *Id.* "Instead, the 'court may consider extrinsic

evidence such as deposition testimony and affidavits,'" and "[i]t may independently weigh the facts and is not constrained to view them in the light most favorable to the non-movant." *Id.*

## B.   Failure to State a Claim

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). Even so, a complaint offering mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This so-called "plausibility standard" is not a probability requirement. *Id.* Even if a plaintiff will probably not recover, a complaint may still survive a motion to dismiss for failure to state a claim, and a court reviewing such a motion should bear in mind that it is testing the sufficiency of the complaint, not the merits of the case. *Twombly*, 550 U.S. at 556; *see also AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) ("[N]otice pleading does not require a plaintiff to specifically plead every element of his cause of action, [but] a complaint must still contain enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001))).

## III.   Discussion

### A.   Subject Matter Jurisdiction

Defendants contend the Court lacks subject matter jurisdiction over Plaintiffs' claims. (Dkts. 10; 10-1.)

#### 1.   The U-Visa Waitlist

For Counts I and III, Plaintiffs allege Defendants have unreasonably delayed the adjudication of their eligibility for the U-Visa

waitlist.  (Dkt. 1 ¶¶ 35–38, 43–49.)  Defendants argue this Court lacks jurisdiction to review these claims because USCIS's pace of adjudication is discretionary and non-reviewable.  (Dkt. 10-1 at 12–16.)

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  The Supreme Court "applies a 'strong presumption' favoring judicial review of administrative action." *Mach Mining, LLC v. EEOC*, 575 U.S. 480, 486 (2015) (citing *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)).  "Unless 'there is persuasive reason to believe' that Congress intended to preclude judicial review, the Court will not preclude review." *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2060 (2019) (Kavanaugh, J., concurring) (quoting *Bowen*, 476 U.S. at 670).  The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a federal court to "compel agency action unlawfully held or unreasonably delayed," *id.* § 706(1).  The APA, however, prohibits judicial review of an agency action if (1) a statute "precludes judicial review" or (2) the "agency action is committed to agency discretion by law." *Id.*

§ 701(a).  Courts thus have jurisdiction under the APA to hear claims brought against an agency for unreasonable delay as long as judicial review is not precluded by statute and the agency action is not committed by law to agency discretion.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.").

The decision whether to grant a U Visa is left to the discretion of the Secretary of Homeland Security, 8 U.S.C. § 1101(a)(15)(U), and is exercised through USCIS, 8 C.F.R. § 214.14(c)(1).  Congress designated USCIS as the agency responsible for "[a]djudications of immigrant visa petitions."  6 U.S.C. § 271(b)(1).  Accordingly, USCIS has a nondiscretionary statutory duty to adjudicate U-Visa petitions.  The Court would thus appear to have jurisdiction over a claim that USCIS refused to adjudicate a U-Visa petition.  But Plaintiffs do not allege that USCIS refused to process their U-Visa petitions.  Instead, they assert that a decision on their U-Visa petitions has been unreasonably delayed. The jurisdictional question raised is whether the pace at which a U-Visa petition is adjudicated is a matter of discretion, which means it would lie

11

beyond this Court's jurisdiction. This question has divided courts, including courts in this district. *Compare M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 597 (W.D. Tex. 2019) ("[T]he court finds that the USCIS has a nondiscretionary duty to adjudicate U Visas within a reasonable time, and therefore the Court has jurisdiction under the APA to review Plaintiffs' APA claim that the USCIS failed to adjudicate Plaintiffs' U Visas 'within a reasonable time.'") *and Lara Santiago v. Mayorkas*, No. 20-cv-4508, 2021 WL 3073690, at *4 (N.D. Ga. Apr. 16, 2021) ("The Court finds that is has jurisdiction over the plaintiffs' claim under the APA for unreasonable delay in determining their eligibility for the U-Visa waitlist."), *with Mendez v. U.S. Dep't of Homeland Sec.*, 507 F. Supp. 3d 882, 887 (W.D. Mich. 2020) ("[T]he Court finds that it lacks subject matter jurisdiction to resolve Plaintiffs' claims that their U-Visa [petitions] have been unreasonably delayed.") *and Hildago Canevaro v. Wolf*, 2021 WL 2283870, at *4 (N.D. Ga. May 20, 2021) ("The Court lacks subject matter jurisdiction over plaintiffs' waitlist claim because they have not alleged a failure to take a non-discretionary action.").

The Court agrees with those courts concluding they have jurisdiction. The regulations promulgated under the INA make it clear

that USCIS is required to determine whether a petitioner is eligible for a U Visa, even if the ultimate decision to issue such a visa is discretionary. *See* 8 C.F.R. § 214.14(c)(5) ("After completing its de novo review of the petition and evidence, USCIS *will* issue a written decision approving or denying form I-918 . . . ." (emphasis added)); *id.* § 214.14(c)(5)(i) ("If USCIS determines that the petitioner has met the requirements for U-1 nonimmigrant status, USCIS *will* approve Form I-918." (emphasis added)); *id.* § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status *must* be placed on a waiting list and receive written notice of such placement." (emphasis added)). These provisions are mandatory. So "while the outcome of the eligibility determination is a matter committed to the agency's discretion under 8 U.S.C. § 1101(a)(15)(U), USCIS *must* assess a petitioner's eligibility in order to comply with the *mandatory* requirement to include eligible [petitioners] on the waitlist." *Uranga v. USCIS*, 490 F. Supp. 3d 86, 101 (D.D.C. 2020) (emphasis added); *see also Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019) ("There is no dispute that [d]efendants are required by law to decide whether to place [p]laintiff on the waiting list and have not yet done so.").

13

Because USCIS must adjudicate U-Visa petitions, it follows that they must do so within a reasonable amount of time. Were it otherwise, USCIS could hold U-Visa petitions in abeyance indefinitely, without providing any reasoned basis for doing so, and thwart Congress's mandate that USCIS adjudicate U-Visa petitions. Congress could not have intended to grant USCIS that power. The statutory requirement that USCIS adjudicate U-Visa petitions necessarily implies that it do so within a reasonable time. *Saini v. USCIS*, 553 F. Supp. 2d 1170, 1176 (E.D. Cal. 2008) ("[B]y necessary implication[,] the adjudication must occur within a reasonable period of time, since a contrary position would permit the USCIS to delay indefinitely, a result Congress could not have intended." (alteration adopted) (internal quotation marks omitted) (citation omitted)); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]he [US]CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.").

Defendants make several arguments in support of their position that the pace of adjudication is committed to agency discretion and this Court lacks jurisdiction to hear Plaintiffs' claims. First, Defendants

argue the INA precludes judicial review.  (Dkt. 10-1 at 14.)  Section 1252(a)(2)(B)(ii) precludes judicial review over "any decision or action" that is "specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).  That section is not in and of itself the source of discretionary authority.  The word "specified" refers to explicit statutory specifications.  Thus, the discretion Defendants claim to have must be specified somewhere other than § 1252(a)(2)(B)(ii).  *See Pulido v. Cuccinelli*, 497 F. Supp. 3d 79, 88 (D.S.C. 2020); *Herrera v. Cuccinelli*, No. 2:19-03049-MBS, 2020 WL 5898987, at *6 (D.S.C. Oct. 5, 2020).  The Court finds no support to conclude Congress granted the Secretary of Homeland Security unfettered discretion over the adjudication of U-Visa petitions such that USCIS could simply not adjudicate a petition.  After all, as explained above, USCIS has a nondiscretionary statutory duty to adjudicate U-Visa petitions, 6 U.S.C. § 271(b)(1), and USCIS *must* assess a petitioner's eligibility in order to comply with the *mandatory* requirement to include eligible petitioners on the waitlist, 8 C.F.R. § 214.14(d)(2).

Second, Defendants cite 8 U.S.C. § 1184(a) for support that "Congress did not prescribe a particular time within which U

nonimmigrant adjudications must be completed," and Defendants assert that "Congress gave the Secretary of Homeland Security . . . discretion to establish regulations governing nonimmigrant admissions, including the adjudication of U nonimmigrant petitions."  (Dkt. 10-1 at 15.)  Section 1184(a) provides that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe."[1]  8 U.S.C. § 1184(a). But the Supreme Court has held that § 1252(a)(2)(B) "bar[s] court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute," *Kucana v. Holder*, 558 U.S. 233, 247 (2010), meaning § 1252(a)(2)(B) does not bar judicial review of decisions made discretionary by regulation, *Pulido*, 497 F. Supp. 3d at

---

[1] The Court understands some find the term "alien" dehumanizing and offensive.  *See* Nicole Acevedo, *Biden Seeks to Replace 'Alien' with Less 'Dehumanizing Term' in Immigration Law*, NBC News (Jan. 22, 2021, 3:34 PM), https://www.nbcnews.com/news/latino/biden-seeks-replace-alien-less-dehumanizing-term-immigration-laws-n1255350.  The current administration is considering legislation to remove that term from U.S. immigration laws. *See* Jorge Lopez & Elizabeth Whiting, *President Biden Issues New Executive Orders and Supports Comprehensive Reform of Immigration Policy*, JD Supra (Jan. 25, 2021), https://www.jdsupra.com/legalnews/president-biden-issues-new-executive-7739651/.  The Court uses the term simply (and only) because it is the term used in the laws at issue.

89. "In other words, an agency cannot by regulation give itself discretion that Congress did not authorize." *Id.*

Third, Defendants rely on a trio of Western District of Michigan decisions: *Arguijo v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-378, 2020 WL 7585809 (W.D. Mich. Dec. 16, 2020); *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-457, 2020 WL 7585846 (W.D. Mich. Dec. 16, 2020); *Mendez*, 2020 WL 7585828. (Dkt. 12 at 5.) These three cases were written by the same magistrate judge and use almost identical language. For brevity purposes, the Court will only analyze *Arguijo*, but the analysis applies to all three of the cases. The *Arguijo* court's *entire* analysis focused on its disagreement with the district court in *M.J.L. v. McAleenan*. That earlier court determined challenges to the pace of adjudication of a U-Visa petition were within its jurisdiction. *M.J.L.*, 420 F. Supp. 3d at 597. The *Arguijo* court rejected its conclusion for two reasons. *Arguijo*, 2020 WL 7585809, at *2–3. First, it found *M.J.L.* "conflate[d] the Secretary's obligation to adjudicate U-Visa [petitions] with questions regarding the pace of such adjudication." *Id.* at *2. This Court disagrees. The *M.J.L.* court did not conflate the two but rather used the fact that USCIS has a nondiscretionary duty to adjudicate U

Visas to infer that USCIS has a nondiscretionary duty to adjudicate them within a reasonable time. *M.J.L.*, 420 F. Supp. 3d at 595–97. It concluded the existence of one (a duty to adjudicate) necessarily implies the other (a requirement to do so in a reasonable amount of time). The *Arguijo* court's reasoning on this point seems to ignore the fact that USCIS must assess a petitioner's eligibility to comply with the mandatory requirement to include eligible petitioners on the waitlist. *See* 8 C.F.R. § 214.14(d)(2); *Uranga*, 490 F. Supp. 3d at 101; *Patel*, 400 F. Supp. 3d at 1383.

Second, the *Arguijo* court concluded "the analysis by the *M.J.L.* court simply disregard[ed] the fact that the relevant statutes contain no language (1) establishing a deadline within which U-Visa [petitions] must be adjudicated or (2) articulating guidelines or factors relevant to the question of the pace of adjudication." *Arguijo*, 2020 WL 7585809, at *3. It is true that the relevant statutes and regulations do not provide a timeline for how quickly USCIS must adjudicate U Visas. But that is not dispositive. "[A] lack of a timeframe alone does not render the statute optional." *Rodriguez v. Nielsen*, No. 16-CV-7092, 2018 WL 4783977, at *12 (E.D.N.Y. Sept. 30, 2018). Indeed, "[t]he absence of a specified

deadline within which action must be taken does not change the nature of USCIS' obligation from one that is ministerial to a matter within the agency's discretion." *Saini*, 553 F. Supp. 2d at 1176.  For these reasons, the Court is unpersuaded by the reasoning in the trio of Western District of Michigan cases.

Because the Court finds USCIS has a nondiscretionary duty to adjudicate U Visas within a reasonable time, the Court also concludes it has jurisdiction to hear Plaintiffs' APA claim that Defendants failed to fulfill this duty.  The Court denies Defendants' motion to dismiss Count I for lack of jurisdiction.

This determination necessarily means the Court lacks jurisdiction to hear Plaintiffs' Mandamus Act claim that Defendants failed to adjudicate Plaintiffs' U-Visa petitions within a reasonable time.  Under the Mandamus Act, "[t]he test for jurisdiction is whether mandamus would be an appropriate means of relief." *Cash v. Barnhart*, 327 F.3d 1252, 1258 (11th Cir. 2003) (per curiam) (citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)).  Mandamus is appropriate when: "(1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Id.*

19

(alteration adopted) (internal quotation marks omitted) (citing *Jones*, 609 F.2d at 781).   Here, the third element is not met as Plaintiffs have a remedy under the APA.   The Court thus dismisses Count III for lack of jurisdiction.   Other courts have reached the same conclusion.   *See Ruiz v. Wolf*, No. 20 C 4276, 2020 WL 6701100, at *5 (N.D. Ill. Nov. 13, 2020) ("Because the APA provides a remedy for unlawfully delayed agency action, mandamus is not necessary for relief.   Plaintiff is already pursuing her remedies under the APA.   This alone is a sufficient basis to deny mandamus relief." (internal quotation marks and citations omitted)); *M.J.L.*, 420 F. Supp. 3d at 598 (same).

### 2.   Employment Authorization

While a U-Visa petition is pending, but before it is adjudicated, the Secretary of Homeland Security has authority to issue the petitioner an EAD if the petition is determined to be "bona fide."   8 U.S.C. § 1184(p)(6). For Count II, Plaintiffs allege that by refusing to adjudicate Plaintiffs' eligibility for employment authorization, Defendants have unlawfully withheld and unreasonably delayed required agency action in violation of the APA.   (Dkt. 1 ¶ 42.)   Defendants argue this Court lacks jurisdiction

to review this claim because employment authorization is discretionary and, therefore, not reviewable under the APA.  (Dkt. 10-1 at 16–20.)

The final sentence of § 1184(p)(6) says: "The Secretary [of Homeland Security] may grant work authorization to any alien who has a pending, bona fide [petition] for nonimmigrant status under section 1101(a)(15)(U)."   8  U.S.C.  § 1184(p)(6).   This language is plainly discretionary.  The Secretary "may" grant work authorizations to those who have "pending, bona fide" petitions for U Visas.  *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) (use of "may" instead of "shall" in a statute means a grant of discretion); *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) ("[W]hen the same Rule uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory.").  It is thus clear that the Secretary could grant a work authorization if the petition is bona fide.  But there is nothing in that language to suggest the Secretary must do so—or even must adjudicate such a request.  *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) ("[N]othing in § 1184(p)(6) requires the agency to do anything.  In fact, the statute shows the agency action is discretionary.").

Plaintiffs acknowledge that the agency has discretion to grant or deny work authorization, but they argue that the agency is required to make a decision on each petition in order to exercise that discretion. (Dkt. 11 at 9.)    In support of their position, Plaintiffs make several arguments: (1) the agency has no discretion to refuse to implement a statute; (2) § 1252(a)(2)(B)(ii) does not preclude judicial review over every discretionary decision in the INA; (3) § 701(a)(2) does not strip this Court of jurisdiction because § 1184(p)(6) provides a meaningful standard for judicial review; and (4) "the text, structure, and history of § 1184(p)(6) indicate [C]ongress sought to create an obligation on behalf of the [a]gency to implement § 1184(p)(6)." (*Id.* at 8–21.)    The Court disagrees with each.[2]

As to Plaintiffs' first argument, § 1184(p)(6) neither mandates that USCIS grant work authorization to those with pending, bona fide

---

[2] To be clear, the Court believes whether it has jurisdiction to decide Plaintiffs' § 1184(p)(6) claim is a matter of simple statutory interpretation.    That determination can, and must, be made by examining the statutory text. *Howe v. Smith*, 452 U.S. 473, 480 (1981). The Court addresses each of Plaintiffs' arguments to be thorough.

petitions[3] nor directs USCIS to promulgate regulations implementing the statute. *Ramires v. Wolf*, No. 1:20-cv-203-KWR-SMV, 2020 WL 6146393, at *4 (D.N.M. Oct. 20, 2020). As the Fourth Circuit explained, "Congress explicitly required the Secretary to implement the U-Visa program but remained silent about implementing work-authorization adjudications. This confirms that implementing the latter is not required." *Gonzalez*, 985 F.3d at 368. "Moreover, there are no regulations implementing § 1184(p)(6) . . . ." *Ramires*, 2020 WL 6146393, at *4. Plaintiffs' first argument is unavailing.

Second, Plaintiffs argue § 1252(a)(2)(B)(ii) does not preclude judicial review. (Dkt. 11 at 10–12.) Section 1252(a)(2)(B)(ii) precludes judicial review over "any decision or action" that is "specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). Plaintiffs argue that "§ 1184(p)(6) does not specify that *implementation* of § 1184(p)(6) is in the [a]gency's

---

[3] Because there is no statute mandating the Secretary grant work authorization to those with a pending, bona fide U-Visa petition, the logic the Court applied in finding a duty to adjudicate U-Visa petitions within a reasonable time does not apply. The Court will not read such a time requirement into a statute that, on its face, does not require the Secretary to take any action but merely grants him or her the right to do so.

discretion." (Dkt. 11 at 11 (emphasis in original).)  The Court disagrees.
Section 1184(p)(6) fits firmly within the § 1252(a)(2)(B)(ii) definition, as
it provides that the agency "*may* grant work authorization to any alien
who has a pending, bona fide [petition] for nonimmigrant status."  8
U.S.C. § 1184(p)(6) (emphasis added).  As explained previously, the
statute unequivocally gives USCIS the discretion to grant an EAD.  This
means § 1252(a)(2)(B)(ii) precludes judicial review.  Other courts have
reached the same conclusion.  *See Uranga*, 490 F. Supp. 3d at 98 (finding
§ 1252(a)(2)(B)(ii) strips it of jurisdiction to review the Secretary's
handling of the EAD requests); *M.J.L.*, 420 F. Supp. 3d at 599 (same).
*But see Pulido*, 497 F. Supp. 3d at 90 (concluding that § 1184(p)(6) does
not trigger the jurisdiction-stripping provision in § 1252(a)(2)(B)(ii)).

Third, Plaintiffs argue § 701(a)(2) does not strip this Court of
jurisdiction because § 1184(p)(6) provides a meaningful standard for
judicial review.  (Dkt. 11 at 12–14.)  Section 701(a)(2) precludes judicial
review when "agency action is committed to agency discretion by law."  5
U.S.C. § 701(a)(2).  In support of their position, Plaintiffs rely on
*Rodriguez*, which found that § 1184(p)(6) contains specific eligibility
requirements.  (Dkt. 11 at 13.)  The *Rodriguez* court, in turn, relied on

*INS v. St. Cyr*, 533 U.S. 289 (2001), in which the Supreme Court held that when eligibility for a benefit is "governed by specific statutory standards," there exists "a right to a ruling on [a petitioner's] eligibility," even though the relief itself is "a matter of grace." *Id.* at 307–08. "By its terms, however, *St. Cyr*'s 'right to a ruling' applies only when the law in question sets out a precondition to the exercise of discretion, and that precondition is expressed in a 'specific statutory standard.'" *N-N v. Mayorkas*, No. 19-CV-5295(EK), 2021 WL 1997033, at *9 (E.D.N.Y. May 18, 2021). Accordingly, this Court must decide whether the statement that "pending, bona fide" petitions are eligible for discretionary EAD grants constitutes a "specific statutory standard" within the meaning of *St. Cyr*.

The Court disagrees with the *Rodriguez* court's application of *St. Cyr* to the Secretary's discretion to issue EADs to U-Visa petitioners. Section 1184(p)(6) merely states that the Secretary may grant work authorization to any person who has a "pending, bona fide" petition. 8 U.S.C. § 1184(p)(6). Under the plain language, the Secretary cannot just provide work authorization to anyone with a *pending* petition—that would read the bona fide requirement out of the statute. But the statute

does not define what constitutes a "bona fide" petition. That term generally means "genuine" or "real." So the Secretary could grant "genuine" petitions? Perhaps petitions that are obviously sufficient? Or not fraudulent? Or maybe "genuine" means "authentic" in that the petition cannot be for some improper purpose? Perhaps it means it must be "sincere" in that the petition must be made in good faith and with honest representations. All that the Court knows is that "pending, bona fide" petition cannot mean the petitioner is "eligible" or "likely eligible" for a U-Visa or Congress would have used those terms. Someone who is ultimately ineligible could still submit a "genuine" or "real" petition. It is not clear what Congress meant by "bona fide," and there are no implementing regulations to provide additional guidance. The Court thus concludes that "bona fide" is not the kind of specific statutory standard to guide the agency's conduct that could be held to require a determination under *St. Cyr*, particularly when the other language of § 1184(p)(6) grants USCIS clear discretionary authority.

Several other courts have reached the same conclusion. *See, e.g.*, *Uranga*, 490 F. Supp. 3d at 100 ("The only requirement in [§ 1184(p)(6)] relating to the grant of EAD is that the U-[V]isa [petition] must be

pending and 'bona fide,' and what this means is not defined by statute or regulation. . . . So the provision does not provide the 'specific statutory standards' contemplated by the Supreme Court by which the agency must act to issue [EADs]."); *Patel*, 400 F. Supp. 3d at 1380–81 ("[W]e don't know what Congress meant by the phrase 'bona fide' because they did not specify the eligibility requirement. . . . Congress's loose 'eligibility' requirement . . . is consistent with an intent to vest the Secretary with maximum discretion."); *Gonzalez*, 985 F.3d at 370–71 (rejecting the plaintiffs' argument that the "pending, bona fide" language in § 1184(p)(6) sets a "specific statutory standard" requiring adjudication); *N-N*, 2021 WL 1997033, at *10 ("There is simply insufficient definitional context in the phrase 'bona fide' to compel agency action in the context of a statute that is framed, on its face, as discretionary.").

Fourth, despite Plaintiffs' argument to the contrary, the text, structure, and history of § 1184(p)(6) confirm that the Secretary has discretion in granting a particular work authorization and in adjudicating requests for work authorizations generally. Congress knows how to require an agency to implement a provision and adjudicate claims, yet Congress did not do so when it granted the Secretary the

27

discretion to provide work authorizations.  Consider, for example, the

Fourth Circuit's discussion of the U-Visa program:

> When Congress created the U-Visa program in 2000 as part
> of the Victims of Trafficking Act, it did not require the
> Secretary to implement it through regulations.  For years, the
> agency did not pass regulations implementing the U-Visa
> program and no U-Visas were issued.  In 2006, as part of the
> Violence Against Women Act, Congress mandated that the
> agency promulgate regulations to implement the program:
>
>> Not later than 180 days after the date of enactment of
>> this Act, the Attorney General, the Secretary of
>> Homeland Security, and the Secretary of State *shall
>> promulgate regulations to implement* the provisions
>> contained in the Battered Immigrant Women
>> Protection Act of 2000[ ], this Act, and the amendments
>> made by this Act.
>
> In response, USCIS promulgated regulations to govern the
> conferral of U-Visas in 2007 and the first U-Visa was issued
> in 2008. But no part of the 2008 Trafficking Victims
> Protection Reauthorization Act—which added the
> permissive work-authorization provision    in § 1184(p)(6)—
> requires the Secretary to implement that provision or
> adjudicate   each work-authorization petition.   Congress
> explicitly required the Secretary to implement the U-Visa
> program but remained silent about
> implementing work-authorization adjudications.    This
> confirms that implementing the latter is not required.

*Gonzalez*, 985 F.3d at 367–68 (footnote omitted) (internal citations

omitted).

For these reasons, the Court concludes it has no jurisdiction to review Count II and grants Defendants' motion to dismiss as to this claim.

## B.   Failure to State a Claim

Defendants also argue Plaintiffs' complaint should be dismissed for failure to state a claim.  (Dkt. 10-1 at 20–35.)

### 1.   Count I

Defendants argue Count I should be dismissed because USCIS has not unreasonably delayed Plaintiffs' U-Visa waitlist adjudication.  (Dkt. 10-1 at 20–31.)  Under the APA, an agency shall, "within a reasonable time, . . . proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  In assessing claims of agency delay under § 555(b), some courts apply a six-factor test articulated in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*").  The Eleventh Circuit has not expressly adopted the *TRAC* factors.  But most lower courts have found the factors to be helpful in analyzing unreasonable delay claims.  *See Gonzalez*, 985 F.3d at 375; *see, e.g.*, *Patel*, 400 F. Supp. 3d at 1383.  The *TRAC* factors are: (1) "the time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has

29

provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotation marks omitted).

"What constitutes an unreasonable delay in the immigration context 'depends to a great extent on the facts of the particular case.'" *Haus v. Nielsen*, No. 17 C 4972, 2018 WL 1035870, at *3 (N.D. Ill. Feb. 23, 2018) (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999)). Courts are thus split on whether it is appropriate to analyze the *TRAC* factors at the motion to dismiss stage. *Compare Uranga*, 490 F. Supp. 3d at 102–06 (finding that the plaintiff failed to state a claim for unreasonable delay with respect to his waitlist eligibility after analyzing

and weighing the *TRAC* factors) *with Haus*, 2018 WL 1035870, at *4 ("[T]he Court is not prepared to hold on a motion to dismiss for failure to state a claim that the three-year delay in reviewing [the plaintiffs'] U visa petitions for placement on the waiting list is reasonable as a matter of law.") *and Gonzalez*, 985 F.3d at 375 ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage."). The Court agrees with the latter position.

At this stage of the case, the Court has insufficient information to evaluate these factors and determine whether Defendants' delay in deciding whether to place Plaintiffs on the waitlist was reasonable.[4] "Although it is entirely possible that th[e] delay is reasonable, there is insufficient information upon which to base such a determination at this stage in the proceedings." *Kim*, 340 F. Supp. 2d at 393. For example, as to the first factor, "[w]hile a 'first in, first out' approach with enumerated exceptions may be a rule of reason, [the court] do[es] not know enough about how the agency implements its rules and exceptions." *Gonzalez*,

---

[4] Plaintiffs filed their U-Visa petitions on January 30, 2018—about 34 months before filing their complaint. (Dkt. 1 ¶¶ 12, 33.) At the time of this order, it has been 43 months since they filed their petitions.

985 F.3d at 375.  The Court thus finds it premature to address these factors.  Plaintiff's complaint alleges enough facts to state a claim for relief.  *See, e.g., Solis v. Cissna*, No. 9:18-00083-MBS, 2018 WL 3819099, at *5 (D.S.C. Aug. 10, 2018) ("Plaintiffs allege that they are entitled to agency action, that the agency action has been unreasonably delayed because no action has be[en] taken in their case in thirty-seven (37) months, and that they have been adversely affected or aggrieved as a result of the delay.  Plaintiffs contend they have alleged sufficient facts to state a plausible claim under the APA.  The court agrees." (internal citations omitted)).

### 2.   Counts II and III

Because the Court finds it does not have jurisdiction to review Counts II and III, the Court declines to address whether Plaintiffs have stated a claim.

### 3.   Attorneys' Fees

Defendants argue Plaintiffs fail to state a claim for attorneys' fees under the Equal Access to Justice Act because all their substantive claims fail and are due to be dismissed.  (Dkt. 10-1 at 35.)  Because the

Court is not dismissing all of Plaintiffs' claims, the Court denies Defendants' motion to dismiss Plaintiffs' claim for attorneys' fees.

## IV.   Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss (Dkt. 10).  Counts II and III are dismissed for lack of subject matter jurisdiction, while Count I may proceed.

**SO ORDERED** this 13th day of August, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE